**STATE of Missouri, Respondent,**

v.

**Michael James HOLMAN, Appellant.**

**Nos. WD 51713, WD 53504.**

Missouri Court of Appeals,
Western District.

March 24, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 28, 1998.

Application for Transfer Denied
May 26, 1998.

John W. Rogers, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Christine M. Blegen, Asst. Atty. Gen. Office, Jefferson City, for respondent.

SPINDEN, Presiding Judge.

While Michael James Holman was in jail awaiting trial on murder charges for the 1993 shooting death of William Stufflebean, Jr., he decided to confess to murdering Stufflebean. He acted without advice from his attorney. After discussing the matter with only his stepfather, Holman asked his stepfather to summon a deputy to the jail to take his confession.

Appealing the circuit court's judgment convicting him of first degree murder and armed criminal action, Holman contends that his confession stemmed from the deputy's telling him the day before, in violation of his right to a lawyer's assistance, that his co-defendant had confessed and had implicated him in Stufflebean's murder. He argues that the circuit court erred in denying his motion to suppress the confession. He also complains that the circuit court erred in refusing his request for a change of venue, by not letting him present evidence attacking the character of the deputy who took his confession, and by erroneously instructing the jury concerning his confession. He also challenges the circuit court's denial of his Rule 29.15 motion to set aside the judgment on the ground that his attorney's assistance was ineffective.

At a hearing to consider Holman's motion to suppress, Holman's stepfather, Bernie Gayle Cabra, testified that Holman called him on Saturday night, October 23, 1993, from jail and asked him to summon Deputy Bill Wright to the jail so Holman could confess to Stufflebean's murder. Cabra testified:

Q What did [Holman] say . . . ?

A He said, "Well, [D]ad, I just want to change my statement," and I said, "Why?" He says, "Well," he said, "I shot B.J." [1]

. . . .

Q . . . What did you ask him next or say to him next that you recall?

A I said, "Son, if you're going to change your statement you should contact your attorney," and he said, "Well, [D]ad, I've tried and I can't get hold of my attorney," and I said, "Well, being that you can't get hold of your attorney before that you make a statement without your attorney you should wait till in the morning and if you want to make a statement then you call me back." "If we can't get hold of your attorney"—I told him that I'd try to. "Well, then, I'll call Bill."

Cabra said that Holman called him the next morning:

Q The next morning then your phone rings and you pick it up. Who was on the other end?

A [Holman].

Q Tell us about that conversation, Mr. Cabra[.]

A He said, "Dad, I want to go ahead and make that"—"I want to get it over with." He said, "Just have Bill come over here."

Q Did you then call—as your son asked you to do, did you call Bill Wright?

A I asked [Holman] if he was sure.

Q Okay. Then he said, "Yes, sir?"

---

1. Evidence indicated that Holman called Stufflebean "B.J."

A I called Bill.

During cross-examination, Cabra testified:

Q ... Did [Holman] indicate to you that Bill Wright had already been to talk to him [on October 23]?

A He did.

Q And he had indicated to you as well that Bill Wright had told him when he contacted you—or [Holman—]that day, that Melissa[2] had given Bill Wright a statement?

A He did.

. . . .

Q [D]id [Holman] also tell you that what Bill Wright had told him was that Melissa had told Bill Wright that [Holman] had killed B.J.?

A Yes.

Q And this conversation with [Holman] he was telling you what Bill Wright—what had happened before he called you?

A That's true.

Q That same day, is that correct?

A Yes, [s]ir. He didn't say—didn't tell me the same day. He told me that he had—that Bill had talked to him. He didn't specifically say that day, no, [s]ir.

Q But he had said that—[Holman] told you that Bill had told him about what he found out from Melissa; is that true?

A Yes, [s]ir.

Cabra later clarified that his stepson had asked for Wright to talk to him "so he could give him another statement as the result of what [Wright] had told him."

Wright did not testify at the suppression hearing. He died before the hearing. Other witnesses testified that Wright had traveled with Melissa Stufflebean from Oklahoma to the Livingston County jail on October 23,

1993. The implication of this testimony was that Wright's first conversation with Holman occurred on the same day that Holman first called his stepfather.

 The circuit court denied Holman's motion to suppress. In reviewing this decision, we view the facts in the light most favorable to the court's ruling, and we disregard all evidence and inferences which are contrary to the court's ruling. *State v. Milliorn,* 794 S.W.2d 181, 183–84 (Mo. banc 1990). Because the circuit court's denial of a motion to suppress is interlocutory, we may consider the record made at the pretrial hearing and at trial. *State v. Collins,* 816 S.W.2d 257, 258 (Mo.App.1991).

 The right to a lawyer's assistance is guaranteed to persons subjected to state criminal investigation and prosecution by the Fourteenth Amendment to the United States Constitution and Article I of the Missouri Constitution.[3] Under the rights guaranteed by these constitutional provisions, an accused who has requested or obtained a lawyer cannot be subjected to further interrogation by the police until the lawyer has been made available to him or her. *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981). When an accused invokes his or her right to legal counsel, "any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." *Michigan v. Jackson,* 475 U.S. 625, 636, 106 S.Ct. 1404, 1411, 89 L.Ed.2d 631 (1986). The United States Supreme Court has defined "interrogation" as "not only ... express questioning, but also ... any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an in-

**2.** Melissa was Stufflebean's wife who had already confessed to Wright that she and Holman had planned to kill Stufflebean.

**3.** The U.S. Supreme Court has declared that the Fourteenth Amendment's due process clause, applicable against the states, incorporates the rights embodied in the Fifth Amendment, *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), and those embodied in the Sixth Amendment, *M<sup>c</sup>Leod v. Ohio,* 381 U.S. 356, 85 S.Ct. 1556, 14 L.Ed.2d 682 (1965). The Fifth

Amendment says, "[N]o person ... shall be compelled in any criminal case to be a witness against himself[.]" Art. I, § 19, Mo. Const., provides an identical guarantee: "[N]o person shall be compelled to testify against himself in a criminal cause[.]" The Sixth Amendment says, "[T]he accused shall enjoy the right ... to have the Assistance of Counsel for his defence." Art. I, § 18(a), Mo. Const., says, "[I]n criminal prosecutions the accused shall have the right to appear and defend ... by counsel[.]"

criminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980).[4]

The circuit court must presume that any waiver of rights to counsel in a police-initiated discussion was invalid, but "nothing in the Sixth Amendment prevents a suspect charged with a crime and represented by counsel from voluntarily choosing, on his own, to speak with police in the absence of an attorney." *Michigan v. Harvey*, 494 U.S. 344, 352, 110 S.Ct. 1176, 1181, 108 L.Ed.2d 293 (1990). The state's burden is to prove by a preponderance of the evidence that an accused has voluntarily, knowingly, and intelligently relinquished his or her rights. *Id.* at 354, 110 S.Ct. at 1182; *State v. Lyons*, 951 S.W.2d 584, 591 (Mo. banc 1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1082, 140 L.Ed.2d 140 (1998).

The state met its burden. Holman asked Cabra to ask Wright to come to the jail to talk to Holman. The impetus for Wright's interrogation of Holman on October 24 came from Holman through his stepfather. When Wright took Holman's confession on October 24, he advised Holman several times before beginning the conversation and again before taking Holman's confession of his right to have his attorney present and his right to remain silent. Holman assured Wright each time that he wanted to waive his rights. Cabra had admonished Holman to talk to his attorney and to think about what he was doing before summoning Wright. Holman assured Cabra that he wanted to waive his rights. By a preponderance of the evidence, Holman initiated the discussion with Wright, and then validly waived his right to have his attorney present before giving his confession to Wright. *State v. Owens*, 827 S.W.2d 226, 228 (Mo.App.1991).

Holman focuses, however, on evidence that Wright and Holman had engaged in a conversation the previous day, on October 23, during which Holman learned that Melissa Stufflebean had confessed and had implicated him. He suggests, without pointing to any evidence to support his contention, that Wright initiated the conversation. To the contrary, the circuit court heard evidence that Holman had asked jail officials to send any law enforcement officers from Daviess County which might appear at the jail to see him. The evidence supports an inference that Holman wanted to talk to Wright or any other officer from Daviess County and initiated the conversation with Wright on October 23. Viewing the evidence in the light most favorable to the circuit court's ruling and disregarding all evidence and inferences to the contrary, we affirm the court's ruling.

In his second point, Holman contends that the circuit court erred by sustaining the state's motion *in limine* and by denying his attempt at trial to present Roscoe Moulthrop's testimony to impeach Wright's reputation for truthfulness and veracity. Wright died before the trial. Holman, nonetheless, contends that Wright "testified" because his voice was on the tape recording of Holman's confession played for the jury and because he signed as a witness on Holman's written statement of confession. Holman contends, relying on *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), that rejection of Moulthrop's testimony deprived him of his constitutional right to cross-examine witnesses.

In sustaining the state's motion *in limine*, the circuit court said, "It's my feeling that this is a matter of impeachment of a witness and if he's not a witness then there is no right to impeach by showing a bad reputation for truth and veracity, and for that reason I don't think we should get into this area[.]" When Holman later made an offer of proof of Moulthrop's testimony, the circuit court said that "specific acts of misconduct are never admissible in this type of situation and I don't believe that the testimony regarding the reputation for truth and veracity is admissible since Mr. Wright did not testify[.]"

---

4. Concerning words or conduct reasonably likely to elicit an incriminating response, the U.S. Supreme Court has said, "Any knowledge the police may have had concerning the unusual susceptibility of a defendant to a particular form of persuasion might be an important factor in determining whether the police should have known that their words or actions were reasonably likely to elicit an incriminating response from the suspect." *Id.* at 302, 100 S.Ct. at 1690.

We agree. Only "[w]hen a witness takes the stand [and] places his reputation for truthfulness and veracity in issue [may the defendant] offer evidence of his general reputation for truthfulness and veracity." *State v. Trimble,* 638 S.W.2d 726, 735 (Mo. banc 1982), *cert. denied,* 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1031 (1983).

In his third point, Holman contends that the circuit court erred in overruling his motion for a change of venue because the jury was exposed to media accounts of another co-defendant's trial and because some jurors had affiliations with the victim's family or law enforcement officials involved in the case. Holman contends that because the murder and trial occurred in Daviess County—having a population of less than 8000 people—and because more than 20 newspaper articles were published and two television reports were aired during the two years between the murder and the trial, "[t]he jurors of Daviess County simply knew too much and heard too much about the case to be impartial."

The circuit court has discretion to grant or to deny a change of venue, and "its ruling will not be disturbed absent abuse of discretion." *State v. Feltrop,* 803 S.W.2d 1, 6 (Mo. banc), *cert. denied,* 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991). The Supreme Court described our standard for reviewing the circuit court's denial of the change of venue motion:

> An abuse of discretion exists only when the record shows that the inhabitants of the county are so prejudiced against the defendant that a fair trial cannot occur there. *State v. Leisure,* 749 S.W.2d 366, 376 (Mo. banc 1988). The relevant question is not whether or to what extent the community remembers the case, "but whether the jurors of ... [the defendant's] trial had such fixed opinions that they could not judge impartially the guilt of the defendant."

*Patton v. Yount,* 467 U.S. 1025, 1035, 104 S.Ct. 2885, 2890, 81 L.Ed.2d 847 (1984). The trial court is in a better position than the appellate court to assess the effect of publicity on the minds of the community and to determine whether the residents of the county are so prejudiced against a defendant that a fair trial would not be possible. *State v. Molasky,* 655 S.W.2d 663, 666 (Mo.App.1983), *cert. denied,* 464 U.S. 1049, 104 S.Ct. 727, 79 L.Ed.2d 187 (1984).

*Id.*

Holman contends that "town gossip" about the case was "more persuasive" than even the media accounts, and "extremely difficult, if not impossible, for jurors to overcome and be impartial when passing judgment." He further contends that six of the twelve jurors admitted that they had heard something about the case through gossip and that only two jurors knew nothing about the case. He further complains that three jurors knew members of the victim's family or law enforcement officers involved in the case.

Such factors, however, do not determine the issue. *Id.*[5] "The critical question is whether the challenged venirepersons unequivocally indicated their ability to evaluate the evidence fairly and impartially." *Id.* at 7.

When Holman questioned the venire panel about what it had heard about the case, many of the panel members could not recall any specifics. All of the panel members who remained after challenges for cause indicated that they could judge the case fairly, impartially, and solely from the evidence. We do not perceive that the circuit court abused its discretion in denying the motion for a change of venue. We deny Holman's third point.

In his fourth point, Holman contends that the circuit court erred by giving the jury

---

5. In finding that the trial court did not abuse its discretion in denying the motion for a change of venue, the *Feltrop* court evaluated these facts: "The bulk of the media coverage occurred more than a year prior to trial; the most recent exhibit was published eight months prior to trial. Of the one hundred two venirepersons questioned, sixty-eight indicated that they had some knowledge of the case; of these the trial court struck eight. Of the fourteen venirepersons finally impaneled, eight had been exposed to some degree of pretrial publicity. All eight were asked specifically whether they could judge the case in a fair and impartial manner, and all eight indicated that they could." *Id.* at 6–7.

Instruction № 13 patterned after MAI–Cr 310.06. The instruction said:

> Evidence has been introduced that the defendant made certain statements relating to the offense for which he is on trial.
>
> If you find that a statement was made by the defendant, and that at that time *he understood what he was saying and doing,* and that the statement was freely and voluntarily made under all the circumstances surrounding and attending the making of the statement, then you may give it such weight as you believe it deserves in arriving at your verdict.
>
> However, if you do not find and believe that the defendant made the statement, or if you do not find and believe that *he understood what he was saying and doing,* or if you do not find and believe that the statement was freely and voluntarily made under all of the circumstances surrounding and attending the making of the statement, then you must disregard it and give it no weight in your deliberations.[6]

He argues that the italicized words should not have been included because no evidence indicated that Holman was incapacitated when he confessed. He argues that the italicized words were very likely to confuse or to mislead the jury. He did not make this objection to the circuit court.

Rule 28.03 requires a specific objection to preserve errors in instructions. It says:

> Counsel shall make specific objections to instructions or verdict forms considered erroneous. No party may assign as error the giving or failure to give instructions or verdict forms unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.

Holman made only a general objection to the instruction.

For this reason, we cannot review Holman's claim unless we determine that it was plain error and exercise our discretion to review it under Rule 30.20. The claimed error is not plain error; therefore, we decline review. "[U]nless a claim of plain error *facially* establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted,' this Court will decline to exercise its discretion to review for plain error under Rule 30.20." *State v. Brown,* 902 S.W.2d 278, 284 (Mo. banc) (quoting Rule 30.20), *cert. denied,* 516 U.S. 1031, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995) (emphasis added). Error in instructions rarely constitutes plain error. *State v. Reichert,* 854 S.W.2d 584, 601 (Mo.App.1993). Nothing about Holman's claim, on its face, causes us to believe that the purported error caused manifest injustice or a miscarriage of justice.

Holman's fifth point is that the circuit court erred in denying his motion to vacate his conviction on the ground that his attorney's assistance was ineffective. He complains that his attorney did not file a motion for change of venue on time and did not object to Instruction № 13. Holman does not make even an arguable case that his attorney's objecting to the instruction and obtaining a change of venue would have made a difference in the outcome of the trial. Holman confessed to the murder. The state's evidence against him was strong. He has failed to make even an arguable claim, as he must do to prevail, that he was prejudiced by his attorney's failings. *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984).

We affirm the circuit court's judgment.

LAURA DENVIR STITH and EDWIN H. SMITH, JJ., concur.

---

**6.** We added the emphasis.