

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-12-00023-CV
_____

PATRICIA J. SHERER, Appellant

V.

JAMES RAY SHERER AND GLORIA JEAN SHERER
(F/K/A GLORIA JEAN ROBERSON), INDIVIDUALLY AND
JAMES RAY SHERER AS POWER-OF-ATTORNEY
FOR BERTHA M. SHERER, Appellees

On Appeal from the 336th Judicial District Court
Fannin County, Texas
Trial Court No. 36332

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

Patricia J. Sherer appeals the trial court's judgment awarding Gloria Jean Sherer, individually, and James Ray Sherer, individually and with power of attorney for Bertha M. Sherer,[1] $72,891.21 in damages, attorney's fees in the amount of $18,531.36, and costs in the amount of $4,891.25.

## I.      Factual and Procedural History

James and Gloria sued their stepmother, Patricia, to recover property belonging to their grandmother, Bertha, held under the name of her son, J. Ray Sherer (Ray), who predeceased Bertha in 1999. Although the family members could not recall the reasons for this arrangement,[2] Bertha's teacher retirement checks were deposited into a bank account under the name of Ray Sherer at the First National Bank of Bonham. In addition, Bertha provided Ray with investment money which he deposited in a Merrill Lynch account. From the beginning, the investment money was commingled with Ray's property.[3]

---

[1]We note that Bertha M. Sherer passed away on October 30, 2007. Although the record contains a notice of death and a request for an amendment of the parties, the parties have proceeded without any amendment of the parties. *See* TEX. R. APP. P. 7.1 ("[T]he appellate court will proceed to adjudicate the appeal as if all parties were alive. . . . [t]he decedent party's name may be used on all papers."); TEX. R. CIV. P. 151 (procedures for filing suggestion of death of plaintiff).

[2]The reasons for this arrangement appear to have been forgotten in the mists of time. None of the witnesses at the second hearing could remember the reasons for this arrangement. We note that Bertha's husband passed away in 1979 after a prolonged illness. Testimony at the second hearing established that the funds were transferred to Ray's name and Bertha moved into a house on Ray's property around the time that Bertha's husband was admitted to a long-term-care facility. In her motion for summary judgment, Patricia suggests the arrangement was to help Bertha qualify for Medicaid benefits. In her affidavit, Patricia claims Bertha certified, in 1990, she had no assets and qualified for Medicaid. At the second hearing, James testified Bertha was not on "public assistance" until she was 104 years old because her income was too high due to her teacher's retirement and social security.

[3]Testimony at trial established that Ray frequently acknowledged that he was looking after Bertha's money.

2

In 1994, Ray and Patricia set up a revocable trust called the "J. Ray Sherer and Patricia J. Sherer Trust" (Trust). Ray and Patricia were the primary beneficiaries of the Trust. Upon the deaths of Ray and Patricia, the Trust assets were to be distributed among the couple's children. The investment money Bertha gave to Ray in 1978 was commingled with the Trust assets.[4] The Trust also designated Ray and Patricia as co-trustees and, upon the death of Ray in 1999, Patricia become the sole trustee of the Trust.[5]

After Ray passed away, Patricia sent Bertha a letter offering to tender to her $14,368.00 provided that she sign a release that Patricia did not have any assets belonging to her.[6] Bertha refused to sign the release. A little more than four years later, Bertha, James, and Gloria brought suit against Patricia complaining that the Trust contained separate property of Ray, that Patricia had been selling real estate owned by the Trust, and that Patricia was converting the assets of the Trust into individual ownership to avoid the distribution clause of the Trust. James and Gloria sought Patricia's removal as trustee, and Bertha sought recovery of money owned by Bertha held by the Trust.

After a hearing at which the motions for summary judgment were considered along with other issues, the late Honorable Jim Dick Lovett rendered judgment that Patricia had not

---

[4]At the second trial, Patricia testified, "We never put any of Bertha's money in our personal trust." The trial court resolved this disputed fact issue by finding the Trust did contain comingled funds. This conclusion has not been challenged on appeal.

[5]We note that the First Judgment, discussed below, approves of Patricia serving as trustee. We note this finding has not been challenged on appeal.

[6]In a letter attached as an exhibit to her response to the motion for sanctions, Patricia claims this is the amount of funds transferred into the account from Bertha's account. We note this letter was not admitted as evidence at trial.

converted any asset belonging to Bertha,[7] ordered Patricia to make an annual accounting of the

Trust to James and Gloria pursuant to the Texas Trust Code, and additionally made the following

orders:

> N.      Patricia J. Sherer is to make a full and complete accounting on or before December 1, 2005, of any assets currently held in the Trust which belong to Bertha M. Sherer, and upon which the Court has imposed a constructive trust. . . .

> O.       In the event, the Plaintiffs do not approve the accounting made by Patricia J. Sherer of the assets held in constructive trust for the benefit of Bertha M. Sherer, then, in that event, the matter will be submitted to the Court of the Court's approval and/or determination and direction.

>        . . . .

> 4.      Patricia J. Sherer, as constructive trustee, is to turn over to James Ray Sherer, as attorney in fact for Bertha Sherer, all funds held in the Trust by Patricia J. Sherer, as constrictive trustee, for the benefit of Bertha Sherer, by cashiers check made payable to James Ray Sherer, as attorney in fact for Bertha M. Sherer, within ten days of the approval by either the Plaintiffs or the Court, of the accounting . . .

We will refer to this document as the First Judgment.

On February 9, 2006, the trial court held Patricia in contempt and ordered her to pay

$14,368.00 by the end of the day.  It is uncontested that Patricia made this payment.  The

contempt order, though, made it clear that this amount did not resolve the dispute.  The order

specifically provides, "[S]uch amount is subject to modification upon receipt and approval of the

accounting to be tendered by the Constructive Trustee."  Shortly after being held in contempt of

---

[7]This finding of fact was rendered in the judgment.  Findings of fact should not be rendered in the body of a judgment and, if rendered in the body of a judgment, cannot be considered on appeal.  *See* TEX. R. CIV. P. 299a ("Findings of fact shall not be recited in a judgment."); *Sutherland v. Cobern*, 843 S.W.2d 127, 131 n.7 (Tex. App.—Texarkana 1992, writ denied) (refusing to consider findings rendered in judgment); *accord Frommer v. Frommer*, 981 S.W.2d 811, 814 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd).

4

court, the parties executed a Rule 11 agreement that was filed with the court on March 10, 2006. In this agreement, the parties "stipulate that the beginning balance for the purpose of accounting is $11,825.00, which was the beginning balance as of October 27, 1978, deposited in either the Bank account or Merrill Lynch account" and modified the terms for the accounting to permit "a recap of monthly totals . . . in lieu of providing a more detailed accounting as provided by the Texas Trust Code." The Rule 11 agreement, though, did not modify the time period covered by the accounting. On March 9, 2006, Patricia's accountant provided an accounting of the bank account and the Merrill Lynch account from 1978 until December 31, 1998. As of December 31, 1998, the two commingled accounts had a combined balance of $78,375.00. James and Gloria sent, on June 14, 2006, a demand letter for $145,935.00.[8]

Bertha passed away in 2007, and the case apparently languished for several years.

On October 26, 2010, James and Gloria filed a "Motion to Enforce the Declaratory Judgment." At the hearing, James and Gloria presented expert testimony by Brian K. Cunningham, a certified public accountant, who testified that a conservative rate of return for the $78,375.00 in the Merrill Lynch account from 1999 until 2011 would be an increase of $56,426.79. Cunningham also testified that a conservative rate of return on the $14,368.00 from 1999 until 2011 would be an increase of $9,265.34.

Patricia presented expert testimony of Steven W. Mohundro, a certified public accountant. Mohundro testified that the bank account at First National Bank of Bonham was a "cash management account" for the Merrill Lynch account and, as of December 31, 1998, had a

---

[8]This demand was based on twenty-eight years of return based on an average Federal Reserve six-month Certificate of Deposit rate of nine percent.

balance of $30,076.91. The Merrill Lynch account had a securities value of $48,299.00 for a total value of $78,375.00. Mohundro also testified that on November 15, 1978, there was an initial deposit of $23,950.37. Mohundro, though, testified that assuming Bertha did not accumulate any savings from her retirement and social security checks that were deposited into the bank account[9] and assuming Bertha paid rent to Ray,[10] the $11,825.00 would have been depleted.

On January 12, 2012, the current district judge signed an order awarding Bertha's estate, James, and Gloria $72,891.21 in damages, attorney's fees in the amount of $18,531.36, and costs in the amount of $4,891.25. We will refer to this order as the Second Judgment.

## II. The First Judgment Was an Interlocutory Judgment

In her first two issues, Patricia argues that the trial court lacked jurisdiction to render the Second Judgment. Patricia also argues that the Second Judgment violates the one judgment rule and, consequently, is void.[11] Alternatively, Patricia claims the trial court erred in granting relief

---

[9]Mohundro testified tht he assumed Bertha's living expenses exceeded her retirement, but did not base this assumption on any personal knowledge and was not presented with any evidence of what Bertha's expenses actually were.

[10]Patricia testified that the agreed $11,825.00 would have been depleted based on rent payments. Patricia presented one check from 1978, which she claimed to be a rent payment in the amount of $150.00. The copy of the check in the appellate record is illegible, and Patricia did not present any other evidence that a landlord-tenant relationship existed between Bertha and Ray.

[11]*Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 863 (Tex. 2010) ("A judgment is void . . . when it is apparent that the court rendering judgment had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act.").

6

that exceeded the supplemental ancillary relief available under the Texas Declaratory Judgment Act.[12]

The majority of Patricia's brief assumes that the First Judgment was a final judgment. When discussing the application of the statute of limitations, Patricia provides an alternative argument that the First Judgment was not final. According to James and Gloria, the proceeding being appealed was an enforcement action.[13] Alternatively, James and Gloria argue that all of the issues disposed of in the First Judgment became final, but the issues not decided in the First Judgment did not become final.

We first note that the First Judgment cannot be final as to some issues but not other issues. Subject to limited exceptions not present in this case,[14] there can only be one final judgment in a case. TEX. R. CIV. P. 301 ("Only one final judgment shall be rendered in any cause except where it is otherwise specially provided by law."); *see Lehmann*, 39 S.W.3d at 192;

___

[12]Under the Texas Declaratory Judgment Act, a trial court may award supplemental ancillary relief to enforce a declaratory judgment. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.011 (West 2011). It is not necessary for us to determine whether the relief awarded exceeds that which may be awarded as supplemental ancillary relief under the Act.

[13]James and Gloria argue that this Court's opinion in *In re Sherer*, No. 06-11-00045-CV, 2011 Tex. App. LEXIS 4112 (Tex. App.—Texarkana May 26, 2011, orig. proceeding) (mem. op.) held this action to be an enforcement action and that this conclusion has become the "law of the case." Under the law of the case doctrine, a court of appeals is ordinarily bound by its initial decision if there is a subsequent appeal in the same case. *Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003). The law of the case doctrine only applies to matters that are fully litigated and determined in an appeal. *See id.* A mandamus, though, is not an appeal. The denial of mandamus relief is not an adjudication on the merits and does not prevent reconsideration of the matter in a subsequent appeal. *Chambers v. O'Quinn*, 242 S.W.3d 30, 32 (Tex. 2007). Further, we did not express any opinion as to the finality of the First Judgment in our denial of mandamus relief and the Second Judgment had yet to be rendered. The law of the case doctrine does not preclude us from reconsidering whether this case is an enforcement action.

[14]Exceptions have been recognized for probate and receiver cases. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192 n.1 (Tex. 2001); *Lavender v. Lavender*, 291 S.W.3d 19, 21 (Tex. App.—Texarkana 2009, no pet.) (except for probate and receiver cases, only one final judgment may be rendered). We note that partition suits have two final judgments. *See Griffin v. Wolfe*, 610 S.W.2d 466 (Tex. 1980).

*Cavazos v. Hancock*, 686 S.W.2d 284, 286 (Tex. App.—Amarillo 1985, no writ); *see also Glunz v. Hernandez*, 908 S.W.2d 253, 257 (Tex. App.—San Antonio 1995, writ denied). An interlocutory judgment becomes final when it merges into the final judgment disposing of the entire case.[15] Thus, the issue before this Court is whether the First Judgment was final as to all issues or whether the First Judgment became final only after the trial court rendered the Second Judgment.

We note that the First Judgment was titled "Final Declaratory Judgment" and contained a "Mother Hubbard"[16] clause. At one time, the Texas Supreme Court took the position that the inclusion of a Mother Hubbard clause could cause an otherwise interlocutory judgment to be final. *Mafrige v. Ross*, 866 S.W.2d 590, 592 (Tex. 1993), *overruled in part by Lehmann*, 39 S.W.3d at 204. The Texas Supreme Court, however, rejected this approach a decade ago. *See Lehmann*, 39 S.W.3d at 192–93.

A final judgment[17] is one that disposes of all parties and all issues in a lawsuit.[18] *Id.* at 200; *Schlipf v. Exxon Corp.*, 644 S.W.2d 453, 454 (Tex. 1982) (per curiam). "Finality 'must be

---

[15]*See Webb v. Jorns*, 488 S.W.2d 407, 409 (Tex. 1972); *see also Hyundai Motor Co. v. Alvarado*, 892 S.W.2d 853, 855 (Tex. 1995) (per curiam) (partial summary judgment becomes final upon disposition of other issues in case).

[16]As used in this context, a Mother Hubbard clause recites that all relief requested and not granted is denied.

[17]We note that the term "final judgment" may have different meanings in different contexts. *Street v. Honorable Second Court of Appeals*, 756 S.W.2d 299, 301 (Tex. 1988). Under the facts of this case, the term refers to whether the judgment is final for purposes of appeal.

[18]We note that an exception may exist if some of the defendants have not been served. A judgment is final for purposes of appeal when (1) a judgment expressly disposes of some, but not all, defendants, (2) the only remaining defendants have not been served or answered, and (3) nothing in the record indicates that the plaintiff ever expected to obtain service on the unserved defendants, such that the case "stands as if there had been a discontinuance" as to the unserved defendants. *In re Sheppard*, 193 S.W.3d 181, 187 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding); *see also M.O. Dental Lab. v. Rape*, 139 S.W.3d 671, 674–75 (Tex. 2004) (per curiam); *In re Miranda*,

resolved by a determination of the intention of the court as gathered from the language of the decree and the record as a whole, aided on occasion by the conduct of the parties.'" *Lehmann*, 39 S.W.3d at 203 (quoting 5 Ray W. McDonald, *Texas Civil Practice* § 27:4[a], at 7 (John S. Covell, ed., 1992 ed.)). The Texas Supreme Court has explained:

> But the language of an order or judgment can make it final, even though it should have been interlocutory, if that language expressly disposes of all claims and all parties. It is not enough, of course, that the order or judgment merely use the word "final". The intent to finally dispose of the case must be unequivocally expressed in the words of the order itself. But if that intent is clear from the order, then the order is final and appealable, even though the record does not provide an adequate basis for rendition of judgment.

*Id*. at 200. Whether an order is a final judgment must be determined from its language, the record, and the conduct of the parties in the case. *Id*. at 195. At oral argument, the parties agreed that the First Judgment was not rendered after a conventional trial on the merits.

The general rule is that "[a] judgment must be sufficiently definite and certain to define and protect the rights of all litigants, or it should provide a definite means of ascertaining such rights, to the end that ministerial officers can carry the judgment into execution without ascertainment of facts not therein stated." *Stewart v. USA Custom Paint & Body Shop*, 870 S.W.2d 18, 20 (Tex. 1994); *see Hinde v. Hinde*, 701 S.W.2d 637, 639 (Tex. 1985) (per curiam); *Ziemian v. TX Arlington Oaks Apts., Ltd*., 233 S.W.3d 548, 553 (Tex. App.—Dallas 2007, pet. dism'd). Any judgment that expressly reserves an issue for later adjudication is interlocutory. *Wilcox v. St. Mary's Univ. of San Antonio, Inc.*, 501 S.W.2d 875, 876 (Tex. 1973); *Cowan v. Moreno*, 903 S.W.2d 119, 124 (Tex. App.—Austin 1995, no writ).

---

142 S.W.3d 354, 357 (Tex. App.—El Paso 2004, orig. proceeding). However, this exception does not apply in this case.

9

Patricia argues that the judgment became final when Bertha failed to object to the accounting within thirty days.[19] As noted above, the First Judgment provides, "Patricia J. Sherer is to make a full and complete accounting on or before December 1, 2005 . . . . In the event, the Plaintiffs do not approve the accounting . . . . the matter will be submitted to the Court for the Court's approval and/or determination and direction." We disagree that the judgment became final for two reasons: (1) a judgment cannot condition finality on uncertain events and (2) even if Bertha's alleged failure to object approved the accounting, the amount of the damages was still unresolved.

The Texas Supreme Court has instructed that "a judgment cannot condition recovery on uncertain events, or base its validity on what the parties might or might not do post-judgment." *Hinde*, 701 S.W.2d at 639; *Griffin v. Long*, No. 12-09-00260-CV, 2011 Tex. App. LEXIS 8910 (Tex. App.—Tyler Nov. 9, 2011, no pet.) (mem. op.). A final judgment must be final under all circumstances. A judgment that is only final under some circumstances but not all circumstances is not a final judgment.

In *Hinde*, the trial court determined that a life insurance policy was improperly cancelled and awarded the plaintiff $49,547.11. *Hinde*, 701 S.W.2d at 639. The trial court, though, alternatively provided that if the defendant reinstated the life insurance policy, the award would be reduced by $25,000.00 to $24,547.11. The Texas Supreme Court held that this judgment was final because "it neither conditions nor clouds with uncertainty the rights and obligations it

_____

[19]Patricia has not argued accord and satisfaction. There is no evidence of any settlement or similar agreement in the record.

establishes." *Id*. Although the amount of compensation differed depending on the circumstances, the amount was certain under all possible circumstances.

"A judgment may not rest upon what may or may not occur after its rendition, and must take its validity from the action of the court and not from what persons may or may not do after the court has rendered the judgment." *Taylor v. Hicks*, 691 S.W.2d 839, 841 (Tex. App.—Fort Worth 1985, no writ). In *Tully*, a judgment that granted relief assuming a pregnant woman would give birth to a child was not final because there were "multiple contingencies that could occur that would prevent the judgment from becoming operative." *Tully v. Tully*, 595 S.W.2d 887, 889 (Tex. Civ. App.—Austin 1980, no writ) ("Although it was certain on December 13, 1978, that appellant was pregnant, it was surely uncertain and indefinite when, and if, she would be delivered of child."). The First District has held that a judgment terminating parental rights but awarding visitation dependent upon the agreement of the adoptive parents and a determination by Child Protective Services that the visitation would be in the child's best interest was not a final judgment. *In re R.J.A.H.*, 101 S.W.3d 762, 764 (Tex. App.—Houston [1st Dist.] 2003, no pet.). In this case, because whether Bertha would object to the accounting was an uncertain event, the First Judgment was not final.

Further, even if Bertha's failure to object resulted in the accounting being approved, the accounting fails to resolve the amount of damages owed. In *McCormick*, a judgment contingent on the resolution of another suit and which failed to specify the amount of damages under some circumstances was not a final judgment. *McCormick Operating Co. v. Gibson Drilling Co.*, 717 S.W.2d 425, 426 (Tex. App.—Tyler 1986, no writ). The Tyler Court held, "A judgment is not

11

final if the damages awarded are unliquidated, conditional or contingent upon the outcome of another trial." *Id.*

Similar to *McCormick*, the First Judgment fails to determine the amount of the damages. Although Patricia claims the accounting shows she only possessed $14,368.00 of Bertha's money, the accounting makes no such determination. The accounting merely established that as of December 31, 1998, the commingled accounts had a cumulative balance of $78,375.00. It did not identify what portion of that money belonged to Bertha. Even if a timely objection was not made, the amount of the damages could not be determined without a judicial adjudication. Further, Patricia was also ordered to "turn over to James Ray Sherer, as attorney in fact for Bertha Sherer, all funds held in Trust . . . ." It is uncontested that Patricia did not turn over any additional funds to Bertha. Assuming Bertha failed to timely object to the accounting, the judgment was still not final. Further judicial proceedings were necessary to resolve the amount of the damages.

The express language of the First Judgment indicates further proceedings will occur. The question is whether these further proceedings render the judgment intrinsically interlocutory. We note that "a judgment may be final even though further proceedings incidental to its proper execution are provided for on the face of the judgment." *Med. Admrs.*, *Inc. v. Koger Properties, Inc.*, 668 S.W.2d 719, 722 (Tex. App.—Houston [1st Dist.] 1983, no writ); *see Hargrove v. Ins. Inv. Corp.*, 176 S.W.2d 744, 747 (Tex. 1944); *Pillitteri v. Brown*, 165 S.W.3d 715, 718 (Tex. App.—Dallas 2004, no pet.) (judgment was final despite later determination of attorney's fees incurred in execution and collection of judgment). *But see Myers v. Ribble*, 796 S.W.2d 222,

12

224 (Tex. App.—Dallas 1990, no writ) (amount of attorneys' fees and costs incurred in connection with primary dispute is not issue incidental to execution of judgment). Thus, the question is whether the trial court's act in ordering an accounting to determine the amount of Bertha's investments reserves an issue for later adjudication.

We note that there is some authority that a judgment can be final despite ordering an accounting. In *Ferguson v. Ferguson*, the Texas Supreme Court determined that a judgment awarding the wife one-half of the profits of the husband's business and ordering the husband to furnish a future accounting to decide the amount of the profits was a final judgment. *Ferguson v. Ferguson*, 338 S.W.2d 945 (1960).

An accounting, though, can prevent a judgment from being final. In *Hunt Oil Co. v. Moore*, the Texas Supreme Court distinguished *Ferguson* and concluded that the partial summary judgment was not final because of a later accounting. *Hunt Oil Co. v. Moore*, 639 S.W.2d 459, 460 (Tex. 1982) ("Any award of damages based on the accounting necessarily had to occur at a subsequent time."). The Texas Supreme Court concluded the partial summary judgment only resolved ownership in the leasehold estate and the amount of damages was left to be determined based on the subsequent accounting. *Id*.

We believe *Ferguson* and *Hunt Oil* can be reconciled based on whether the accounting was a ministerial act or whether the accounting would require a judicial determination of disputed facts. In *Ferguson*, the court viewed the rendering of the accounting and profits as a "ministerial act incident to the final judgment." *Ferguson*, 338 S.W.2d at 948. Similar to *Hunt Oil*, we believe the accounting in this case prevented the First Judgment from being a final

13

judgment. By providing for a judicial determination, the First Judgment recognized that the accounting would be more than a ministerial act. The First Judgment failed to definitively settle the rights of the parties; specifically, it reserved the issue of the amount of the damages for later determination. The evidence at the hearing demonstrates that the amount of the investment was contested, and the expert testimony on this issue differed substantially. Patricia presented evidence that Bertha's expenses had completely offset the investment, while James and Gloria presented evidence supporting the trial court's $72,891.21 award. The accounting and subsequent determination of the amount of Bertha's investments were significant judicial decisions and were not ministerial. This accounting, similar to the one at issue in *Hunt Oil*, was not a mere incidental issue to the judgment's execution.

Patricia argues that the Second Judgment modified the amount of Bertha's money previously determined to be in her possession. The problem is that the First Judgment did not make any determination as to that amount and explicitly ordered an accounting in contemplation of a later determination of the amount. The amount of Bertha's money in Patricia's possession was never determined until the rendition of the Second Judgment. The First Judgment was merely an interlocutory order which could be modified until the trial court finally disposed of the case.

Although the First Judgment is titled "Final Declaratory Judgment," the First Judgment contemplated further proceedings and further judicial action. The First Judgment explicitly left the amount of money that belonged to Bertha to be determined. As a result, the First Judgment

14

was intended, despite its title, to be an interlocutory action. The First Judgment did not become a final judgment until the trial court rendered the Second Judgment disposing of all of the issues.

## III. The Statute of Limitations Bars Suit

Before the trial court rendered the First Judgment, Patricia filed a summary judgment motion arguing, among other things, that the claims were barred by the statute of limitations. When the trial court rendered the Second Judgment, the denial of this summary judgment became final. Patricia renewed her statute of limitations argument in the "Defendant's objections to Plaintiff's Proposed Judgment," which states, "Further the Plaintiffs are barred from this recovery by limitations." In addition, Patricia submitted proposed findings of fact and conclusions of law,[20] including the following:

> The Plaintiffs filing of their declaratory judgment on July 27, 2004, was more than four (4) years after the date that the Plaintiffs had knowledge of their claim and had in fact made demand upon the Defendant on June 29, 2000, resulting in the Plaintiffs' claims against the Defendant being barred by limitations.

On appeal, Patricia argues that limitations ran before the suit was filed in 2004 and, alternatively, that limitations began to run when the First Judgment declared Patricia a constructive trustee. In their brief, James and Gloria argue that Patricia has waived any statute of limitations argument

---

[20]We note that the defendant's proposed findings of fact and conclusions of law were filed on the same day that the trial court issued its findings of fact and conclusions of law. Although the proposed findings were filed after the notice of appeal, the trial court still retained jurisdiction to vacate or modify its judgment. *See* TEX. R. CIV. P. 329b(d) ("The trial court, regardless of whether an appeal has been perfected, has plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment within thirty days after the judgment is signed.").

by failing to appeal the First Judgment.[21]  At oral argument, Bertha argued that the lawsuit was brought within the four year statute of limitations.

In the Appellees' original pleadings, it was alleged that Patricia had retained monies lawfully owned by Bertha and had directly taken money from such funds.  The Appellees prayed that the court impose a constructive trust on any of Bertha's funds held in such a manner.  Further the Appellees urged that Patricia's actions amounted to a conversion of Bertha's funds to her own use.  In the First Judgment, the trial court found that there had been no conversion of the funds, but did impose a constructive trust on any funds of Bertha held by Patricia and ordered that such funds be restored to Bertha.  In so doing, the trial court implicitly found that Patricia had been unjustly enriched with Bertha's funds.[22]

---

[21]On appeal, James and Gloria argue limitations do not apply because (1) no appeal was taken from Judge Lovett's judgment, (2) a judgment does not become dormant for ten years, and (3) Patricia has not pled or argued laches. These arguments, though, require the First Judgment to have been a final judgment.  As discussed above, the First Judgment was not a final judgment.  The arguments of the parties concerning whether the First Judgment was final are addressed above.

[22]    The unjust enrichment doctrine applies the principles of restitution to disputes which for one reason or another are not governed by a contract between the contending parties. *See Lone Star Steel Co. v. Scott*, 759 S.W.2d 144, 154 (Tex. App.—Texarkana 1988, writ denied).  When a defendant has been unjustly enriched by the receipt of benefits in a manner not governed by contract, the law implies a contractual obligation upon the defendant to restore the benefits to the plaintiff. *Barrett v. Ferrell*, 550 S.W.2d 138, 143 (Tex. Civ. App.—Tyler 1977, writ ref'd n.r.e.); 42 C.J.S. Implied and Constructive Contracts § 5.  Unjust enrichment is typically found under circumstances in which one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage. *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).  Recovery under principles of unjust enrichment is also appropriate when a contemplated agreement is unenforceable, impossible, not fully performed, thwarted by mutual mistake, or void for other legal reasons. *City of Harker Heights v. Sun Meadows Land, Ltd.*, 830 S.W.2d 313, 319 (Tex. App.—Austin 1992, no writ).

*Burlington N. R.R. v. Sw. Elec. Power*, 925 S.W.2d 92, 96 (Tex. App.—Texarkana 1996), *aff'd*, 965 S.W.2d 467 (Tex. 1998).

The statute of limitations did not start to run when the trial court imposed a constructive trust; rather, the limitations period started to run when the unjust enrichment cause of action accrued. Patricia's argument presumes that a constructive trust is a cause of action. A constructive trust is a remedy—not a cause of action. *See Meadows v. Bierschwale*, 516 S.W.2d 125, 131 (Tex. 1974) (concluding based on "the broad and flexible nature of the constructive trust remedy" that it applies to unjust enrichment); *In re Estate of Arrendell*, 213 S.W.3d 496, 504 (Tex. App.—Texarkana 2006, no pet.). An underlying cause of action such as a breach of fiduciary duty, conversion, or unjust enrichment is required. The constructive trust is merely the remedy used to grant relief on the underlying cause of action.[23]

Although Bertha only specifically pled conversion, the First Judgment made an implied finding of unjust enrichment.[24] After the second trial, the appellees submitted proposed findings of facts and conclusions of law which specifically stated that repayment of Bertha's funds was required "to prevent unjust enrichment." Likewise, the trial court's findings of fact and conclusions of law signed after the rendition of the Second Judgment contain an explicit finding of unjust enrichment. Although Patricia argued that the two-year statute of limitations applied at trial, Patricia argues on appeal that the residual four-year statute of limitations should apply. The Texas Supreme Court has held that the two-year statute of limitations applies to unjust

---

[23]We note that Bertha was entitled to a choice of either a constructive trust or an equitable lien. *See Meadows*, 516 S.W.2d at 130.

[24]We note that James, Gloria, and Bertha did not plead unjust enrichment. Patricia, though, has not complained about this pleading defect on appeal and we will presume unjust enrichment was tried by consent. *See* TEX. R. CIV. P. 67.

enrichment. *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 871 (Tex. 2007); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003 (West Supp. 2012).

The record conclusively established Bertha failed to timely file suit. On June 29, 2000, Bertha sent Patricia a letter, which provides as follows:

> FURTHERMORE, WE DEMAND THAT ALL MONIES HELD BY PATRICIA J. SHERER BELONGING TO BERTHA SHERER BE RETURNED IMMEDIATELY. IF SAID MONIES ARE NOT RETURNED IMMEDIATELY, THEN ALL EVIDENCE REGARDING THIS MATTER WILL ALSO BE PRESENTED TO THE PROPER AUTHORITIES FOR PROSECUTION.

On July 21, 2000, Patricia advised Bertha that she was in possession of $14,368.00 of Bertha's money. Patricia, though, demanded that Bertha sign a release that the Trust did not have any other assets belonging to Bertha before she would tender the $14,368.00. Bertha, James, and Gloria did not file suit until July 27, 2004.

The record conclusively establishes that the applicable two-year statute of limitations for unjust enrichment bars suit. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003. The trial court erred in rendering judgment awarding damages for Patricia's unjust enrichment.

## IV. Conclusion

We conclude that the trial court had jurisdiction to render the Second Judgment because the First Judgment, despite claiming to be final, was actually only an interlocutory judgment. The intent of the First Judgment was for further proceedings to occur. The First Judgment became final when the trial court rendered the Second Judgment. The trial court, though, erred

18

in concluding that the statute of limitations did not bar suit. Bertha failed to timely bring suit against Patricia.

We reverse the trial court's judgment and render a take nothing judgment in favor of Patricia.

Jack Carter
Justice

Date Submitted:     November 8, 2012
Date Decided:      January 4, 2013