**Affirmed and Opinion filed February 25, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-01003-CV

---

## DAVID WIGHT CONSTRUCTION COMPANY, LTD., Appellant

### V.

## FEDERAL DEPOSIT INSURANCE COMMISSION AS RECEIVER FOR FIRST NATIONAL BANK, N.A., Appellee

---

### On Appeal from County Court at Law Number Three
### Galveston County, Texas
### Trial Court Cause No. CV-0063221-A

---

## O P I N I O N

This fraud case arises out of a dispute between a general contractor on a real-estate development project and the bank that provided the construction financing for the real-estate developer. The trial court granted summary judgment in favor of the bank on the general contractor's various claims against the bank, and the general contractor now appeals, challenging the no-evidence summary judgment as to the general contractor's common-law fraud claim. The main issue

in this appeal is whether the summary-judgment evidence raises a genuine fact issue regarding the general contractor's allegation that the bank represented to the general contractor that the bank was withholding ten percent of each payment as "retainage" to be paid to the general contractor upon completion of its work on the project. We conclude that the summary-judgment evidence does not raise a genuine fact issue in this regard, and we affirm the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Friendswood Cypress, LP (hereinafter "Friendswood") embarked upon a real-estate-development project. To finance the project, Friendswood entered into a construction loan agreement with appellee/defendant First National Bank, N.A. (hereinafter the "Bank").[1] Friendswood hired appellant/plaintiff David Wight Construction Company, Ltd. (hereinafter "Wight Construction") to construct streets, underground drainage, and water and sewage systems for a new real-estate development as part of the project. As Wight Construction completed work under its contract with Friendswood, Wight Construction submitted requests to Friendswood for payment. These requests reflected that ten percent in retainage was being withheld by Friendswood. Friendswood, in turn, presented these requests to the Bank, requesting that the Bank advance loan proceeds to Friendswood. In response, the Bank advanced proceeds from the loan to Friendswood.

Friendswood began having difficulties making loan payments in April 2008, and in June 2008, defaulted. Wight Construction allegedly completed work on the project in May 2008, but allegedly did not receive payment in response to payment

_____

[1] In September 2013, during the pendency of this appeal, the Comptroller of the Currency appointed the Federal Deposit Insurance Corporation as receiver for the Bank. Thus, the appellee in this case is The Federal Deposit Insurance Commission as receiver for First National Bank, N.A.

requests submitted in May or June, nor did it receive the "retainage" withheld from its previous payment requests.

In February 2010, the Bank foreclosed its lien in the real property involved in the project. Wight Construction brought suit, alleging a variety of claims against various defendants, including the Bank. The Bank filed two summary-judgment motions seeking dismissal of Wight Construction's claims against the Bank. After the Bank filed these motions, Wight Construction amended its petition to add a claim for fraud and a request that the trial court impose a constructive trust. The next week, the trial court granted summary judgment in favor of the Bank on Wight Construction's (1) suit to foreclose mechanic's and materialmen's lien, (2) suit to foreclose constitutional lien, (3) breach-of-contract claim, (4) claim for breach of alleged retainage obligations under section 53.101(a) of the Texas Property Code, (5) promissory-estoppel claim, (6) negligence claim, (7) quantum-meruit claim, (8) unjust-enrichment claim, and (9) suit to remove a cloud on title. The Bank then filed a no-evidence motion for summary judgment seeking dismissal of the fraud claim and constructive-trust request. The trial court granted the motion and later severed Wight Construction's claims against the Bank to create a final judgment.

## II. STANDARD OF REVIEW

In reviewing a no-evidence summary judgment, we ascertain whether the nonmovant pointed out summary-judgment evidence raising a genuine issue of fact as to the essential elements attacked in the no-evidence motion. *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 206-08 (Tex. 2002). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless

reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

## III. ISSUES AND ANALYSIS

On appeal, Wight Construction advances two issues: it asserts that the trial court erred in granting the Bank's summary-judgment motion as to the fraud claim and as to the request for the imposition of a constructive trust.

### A. Did the trial court err in granting a no-evidence summary judgment as to the fraud claim?

In its first issue, Wight Construction argues that the trial court erred in granting summary judgment on its claim for common-law fraud. The Bank challenged each of the essential elements of Wight Construction's common-law fraud claim. One of these elements is that the Bank made a material representation to Wight Construction. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001). Wight Construction asserts that the Bank represented to Wight Construction that it was withholding ten percent of each payment as "retainage" to be paid to Wight Construction upon completion of its work on the project. Though Wight Construction asserts that the Bank made such a representation, Wight Construction does not cite to any summary-judgment evidence that, under the summary-judgment standard of review, would allow reasonable and fair-minded jurors to find that the Bank made such a representation.

In response to the Bank's no-evidence summary-judgment motion, Wight Construction submitted an affidavit from David Wight and deposition testimony from Richard Hendee, the Bank's corporate representative. In his affidavit, David

4

Wight stated that Wight Construction submitted requests for payment on work completed and materials provided to date and that each request was reduced by a retainage amount of ten percent. David Wight did not state to whom he submitted the requests or who directed that the requests be reduced. He did not state that the Bank withheld the retainage, nor did he testify that the Bank made any representation to Wight Construction.

Hendee explained, in his deposition, that he did not handle the Bank's loan to Friendswood. Hendee repeatedly testified that the Bank had a relationship with only the borrower, Friendswood, and not Wight Construction. He explained that when the Bank has a construction loan with a borrower and a company submits a request for payment to the borrower for construction work, the Bank reviews the payment request and advances amounts under the loan agreement so that the borrower can pay the company. Hendee stated that usually the Bank would place the proceeds in the borrower's checking account, or if the borrower did not have a checking account, the Bank would issue a cashier's check. Hendee stated that Wight submitted requests for payment to Friendswood and that Friendswood submitted these requests to the Bank. According to Hendee, the Bank did not withhold retainage; the Bank advanced to Friendswood the amount of funds requested by Friendswood. Hendee noted that it was Friendswood's obligation to pay Wight Construction. Hendee agreed that on one occasion, the Bank advanced proceeds from the loan and made a direct payment to Wight Construction by means of a cashier's check from the Bank, even though Friendswood had a checking account with the Bank at that time. Hendee testified that "we never talked to Mr. Wight."

Wight Construction argues that Hendee's testimony raises a genuine fact issue as to whether the Bank represented to Wight Construction that it was

5

withholding ten percent of each payment as "retainage" to be paid to Wight Construction upon completion of its work on the project. On one occasion the Bank issued a cashier's check directly to Wight Construction. Nonetheless, this action does not change the fact that the payment to Wight Construction was made with funds advanced to Friendswood by the Bank under the construction loan. Wight Construction calculated the amount of its payment request by deducting ten percent as retainage. Friendswood then forwarded this request to the Bank, and the Bank advanced funds under the construction loan and issued a cashier's check in the requested amount to Wight Construction. Neither the Bank's issuance of this cashier's check nor its advancing of funds to Friendswood to pay other payment requests raises a genuine fact issue as to whether the Bank represented to Wight Construction that the Bank was withholding ten percent of each payment as "retainage" to be paid to Wight Construction upon completion of its work on the project. According to Hendee, the Bank advanced all funds available to Friendswood under the construction loan with the Bank.

Hendee's testimony shows that the Bank received documents from Friendswood indicating that the amount requested by Friendswood had been reduced to reflect the ten-percent retainage. Hendee's testimony also shows that he understands what retainage is and that the Bank was aware that the payment requests had been reduced to reflect a ten-percent retainage. Still, Hendee did not testify that there was any communication between the Bank and Wight Construction. On the contrary, Hendee indicated that no Bank employee ever spoke to David Wight. Under the familiar summary-judgment standard of review, the summary-judgment evidence would not allow reasonable and fair-minded jurors to find that the Bank represented to Wight Construction that the Bank was withholding ten percent of each payment as "retainage" to be paid to Wight

6

Construction upon completion of its work on the project. *See Goodyear Tire & Rubber Co.*, 236 S.W.3d at 755; *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 758. The trial court did not err in granting the Bank's no-evidence summary-judgment motion as to Wight Construction's fraud claim.[2] *See Goodyear Tire & Rubber Co.*, 236 S.W.3d at 755; *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 758. Accordingly, we overrule Wight Construction's first issue.

**B.    Did the trial court err in granting summary judgment as to the request for the constructive-trust remedy?**

In its second issue, Wight Construction argues that the trial court erred in granting the Bank's motion for summary judgment as to Wight Construction's request for the remedy of constructive trust. Wight Construction correctly notes that the imposition of a constructive trust is a remedy, not an independent claim. *See Beverly Foundation v. W.W. Lynch*, 301 S.W.3d 734, 736 (Tex. App.—Amarillo, 2009, no pet.); *Sherer v. Sherer*, 393 S.W.3d 480, 491 (Tex. App.—Texarkana 2013, pet. denied); *LTTS Charter School, Inc. v. Palasota*, 362 S.W.3d 202, 209 (Tex. App.—Dallas, 2012, no pet.). But, the only claim against the Bank as to which Wight Construction has assigned error on appeal is its claim for common-law fraud, and we already have concluded that the trial court correctly granted summary judgment as to this claim. *See Beverly Foundation*, 301 S.W.3d at 736; *Sherer*, 393 S.W.3d at 491; *LTTS Charter School, Inc.*, 362 S.W.3d at 209. Thus, no claim by Wight Construction against the Bank remains that could support imposition of a constructive trust. Accordingly, we overrule Wight Construction's second issue.

---

[2] We need not and do not address the other essential elements of Wight Construction's fraud claim that the Bank attacked in its motion.

## V. CONCLUSION

The summary-judgment evidence does not raise a genuine fact issue as to whether the Bank made a material representation to Wight Construction, and the trial court did not err in granting summary-judgment as to Wight Construction's common-law fraud claim. Because no claim remains that might support the imposition of a constructive trust, we cannot reverse the trial court's judgment as to the request for this remedy.

The trial court's judgment is affirmed.

/s/    Kem Thompson Frost
          Chief Justice

Panel consists of Chief Justice Frost and Justices Busby and Donovan.