

# NUMBER 13-20-00343-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

VERNON MICHAEL ABSHIER,                                    Appellant,

v.

MELVA E. LONG,                                                Appellee.

### On appeal from the 405th District Court
### of Galveston County, Texas.

# MEMORANDUM OPINION

**Before Justices Hinojosa, Tijerina, and Silva**
**Memorandum Opinion by Justice Silva**

Appellant Vernon Michael Abshier brought a suit against his sister, appellee Melva

E. Long, asserting multiple claims seeking compensation for property Long sold. Long

moved for summary judgment on all of Abshier's claims. By nine issues, which we have

consolidated into three,[1] Abshier asserts that the trial court erred in granting Long's no-evidence and traditional summary judgment motion. We affirm.[2]

## I.  BACKGROUND

### A.  The Property Conveyances

This suit concerns lots 43, 44, 45, and 46 in Block 102 of 534 4th Street, San Leon, Texas (the property), which was deeded to Long by Tom Sprague and Wanda Sprague on November 7, 2003 (2003 Deed).[3] The 2003 Deed was filed and recorded, and a copy of the deed appears in the record.

It is undisputed that Long never resided on the property, and Abshier moved onto the property, into a trailer provided by Long, shortly after the 2003 Deed was executed. According to Abshier, "[f]or the next eight (8) years," he gave Long $700 each month "to

---

[1] We note that Abshier consolidated several of his numbered issues in his brief, including issues one through four and six and seven. Abshier's listed issues are as follows: the trial court erred in granting Long's (1) "'no[-]evidence' and traditional motion for summary judgment when a fact issue existed on each of [Abshier's] causes of action"; (2) "'no[-]evidence' summary judgment—if it did—when [Long] failed to specifically identify elements of each cause of action that [Abshier] failed to meet"; (3) "'no[-]evidence' summary judgment—if it did—when [Long] invoked it on issues where she had the burden of proof"; (4) "'no[-]evidence' and traditional motion for summary judgment where [Long] failed to properly and distinctly segregate the two disparate areas in her motion"; (5) "motion for summary judgment based upon the Statute of Frauds . . . ."; (6) "motion for summary judgment based upon the two (2) year Statute of Limitations . . . ."; (7) "motion for summary judgment based upon the four (4) year Statute of Limitations . . . ."; (8) "motion for summary judgment under the facts because [Long] was bound by the doctrine of 'promissory estoppel'"; and (9) "motion for summary judgment under the facts because the pleadings and facts alleged were such that a jury could conclude that [Long] had a 'fiduciary duty' to Vernon and that she—not [Abshier]—had the burden of proof."

[2] This case is before this Court on transfer from the Fourteenth Court of Appeals in Houston pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

[3] On appeal, Abshier claims he purchased the property, and through various documents in the record, Abshier makes various assertions regarding the 2003 purchase of the property, stating: he purchased the property by "financ[ing] through [Long]"; he purchased the property "in [Long's] name"; he purchased the property which "was never owned by [Long]"; Long "convinced [him] to 'put the land in her name'"; and "[Long] bought" the property.

pay for the note payment[4] and the utilities and taxes." Long disputes this, stating that any payment collection was for rent, "two-thirds of the time, [Abshier] did not [pay rent]," and at most, Abshier gave her "enough to pay utilities."

In September 2008, Hurricane Ike struck, causing damage to the trailer on the property. Abshier briefly resided at another property owned by Long. At some unspecified point, Abshier stated he "went and applied" for Federal Emergency Management Agency "[(]FEMA[)] money" to obtain a temporary "FEMA [t]railer," which he placed on the property at issue. Abshier stated he lived in the FEMA trailer "for several years before [he] qualified for the free $84,995.29 home" (FEMA house). Apart from Abshier's affidavit, wherein he states he received the FEMA trailer because he "told FEMA that the land was [his]," no documents in the record concern the FEMA trailer.

On December 8, 2010, Long and Abshier executed a quitclaim deed (2010 Deed) Long conveyed to Abshier one-half interest in the property. The 2010 Deed was filed and recorded. The parties agree that this deed was executed in response to FEMA's involvement in the property but dispute several related facts.

Abshier states in his affidavit that the 2010 Deed followed a discussion regarding the "fact that the FEMA house was being built on [his] land and that [he and Long] needed to get the title to the land in [his] name." Abshier explained that the property was deeded to him "without any money being paid to [Long] . . . because the [property] had belonged

---

4 It is unclear what "note payment" Abshier references here. A release of lien dated November 7, 2003, in the record indicates in relevant part: "Long has paid in full Lots 43, 44, 45, and 46 in Block 102 . . . ."

3

to [him] all along" pursuant to a prior oral agreement. Abshier said he "did not notice that [Long] had only deeded [him] half" of the property when the 2010 Deed was executed.

Long stated she executed the 2010 Deed because she became concerned about her own liability and potential property loss: "The purpose was so the federal government couldn't come after me for him [sic] doing fraud." Long said she did not assist Abshier in completing any FEMA paperwork, and he never disclosed to her how he became eligible to receive the FEMA trailer or federal funds for the FEMA house. Long maintained that Abshier showed her "his FEMA papers" for the first time after the FEMA house was constructed, and Abshier told her that he needed $6,500. The documents purportedly cautioned that "if [Abshier] didn't come up with [$6,500], they could take the property." The parties agree they jointly applied for and received a private loan for $6,500.

On May 31, 2011, Abshier executed[5] a "Due on Sale and Transfer of Property Disclosure" and accompanying unsecured forgivable promissory note in the amount of $84,995.29 through the Community Development Block Grant (CDBG) Disaster Recovery Program. The document contained language admonishing Abshier that the loan was contingent on Abshier living in a house on the property as his principal place of residence "during the term of the loan for a period of three[] (3) years following completion of construction and repay the loan to the Lender according to the terms of the Unsecured Note." The document further warned that selling or moving from the property during the defined period would result in the acceleration of any unforgiven and unpaid balance on

---

[5] Abshier stated in his affidavit that "Long helped [him] fill out the extensive paperwork that was necessary to qualify" for the federal grant. Only Abshier's name and signature are on these documents.

4

the unsecured note, including interest if applicable. Abshier was also required to obtain and maintain flood and hazard insurance.

On August 11, 2014, a warranty deed (2014 Deed) was filed and recorded, wherein Abshier allegedly conveyed to Long his entire half interest in the property. Abshier disputes that his signature is on the notarized[6] deed, claiming that someone forged his signature.

On October 7, 2014, a release of lien on the property created by the CDBG loan was effected.

On March 7, 2017, Long filed a forcible detainer action against Abshier and Abshier's daughter, Lindsey Abshier. According to the forcible detainer petition, Long agreed to allow Abshier to live on the property but after proper notice of terminating tenancy, Abshier refused to vacate the residence; Lindsey had never been given permission to reside at the residence. A default judgment was issued followed by a writ of possession. Abshier then went on to briefly live in a trailer on another piece of property owned by Long.

Approximately one year later, in April 2018, Long sold a portion of the property, lots 43 and 44, for $100,000. She sold lots 45 and 46 in June 2018 for $40,000.

---

[6] The affidavit of Marilyn Yvonne Kershner, the notary responsible for notarizing the 2014 Deed, appears in the record. Kershner's affidavit states that the "identit[ies] of [Abshier] and [Long], whose signatures [she] witnessed, were proven to [her] to [her] satisfaction."

**B. The Suit**

Abshier asserted the following causes of action against Long in his live petition[7]: breach of contract, promissory estoppel, "conversion/constructive trust," common law fraud, violation of the Texas Theft Liability Act (TTLA), and "money had and received and constructive trust."[8] Abshier's claims were all premised on allegations that Long, in contravention to their long-standing agreement to transfer ownership of the property to Abshier, sold the property without his knowledge and never paid him any proceeds. Notably, as Abshier clarifies in a later motion: "[Abshier's] suit is not for theft of the land, nor for the forging of the deed. [Abshier] is suing for his half of the $140,000 (or more) that [Long] admits that she kept and never paid him." Abshier also "plead[ed] the application of the discovery rule and fraudulent concealment to the extent that the statute of limitations for any of the above causes of action may have otherwise passed."

On April 9, 2020, Long moved for no-evidence and traditional summary judgment on the affirmative defense of limitations for four of Abshier's six claims and asserted a statute of frauds defense for all six claims. Abshier's statute of limitations defense concerned Abshier's promissory estoppel, common law fraud, "conversion/constructive

---

[7] The original petition is not in the record. A second amended original petition filed September 28, 2018, names two additional plaintiffs—Steven Bundrant, Long's former paramour, and Garry R. Abshier, Long and Abshier's now-deceased brother—and concerns unrelated causes of action. The trial court signed an agreed order of severance on April 1, 2019, and a fourth and final amended petition was filed November 15, 2019, listing Abshier and Long as the only parties.

[8] "A constructive trust is an equitable, court-created remedy" which accompanies an underlying cause of action. *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 87 (Tex. 2015); *Sherer v. Sherer*, 393 S.W.3d 480, 491 (Tex. App.—Texarkana 2013, pet. denied) (providing that a "constructive trust is merely the remedy used to grant relief on the underlying cause of action" such as "a breach of fiduciary duty" or "conversion").

trust," and "money had and received and constructive trust" claims. Long's no-evidence analysis was limited to Abshier's claims for promissory estoppel, TTLA violation, conversion, and "money had and received and constructive trust."

Abshier filed a response to Long's summary judgment motion on May 8, 2020, arguing Long failed to "comply with the no-evidence summary judgment rule" so the burden never shifted to him to show proof of the challenged claims. Abshier disputed the applicability of Long's asserted affirmative defenses and raised exceptions in the alternative. Abshier declined to address his causes of action for constructive trust, common law fraud, or money had and received, stating that Long "ha[d] not raised them" in her summary judgment motion.

On June 24, 2020, the trial court granted traditional and no-evidence summary judgment in Long's favor and ordered that Abshier take nothing on all of his claims against Long. This appeal followed.[9]

## II.    ISSUES PRESENTED

By three consolidated issues, Abshier argues (1) Long did not meet her no-evidence summary judgment burden because she failed to identify the elements of the

---

[9] This Court received notice that Long passed away on September 25, 2021, during the pendency of this appeal. The submitted suggestion of death stated that Long is survived by one heir, Shayla Burch. *See* TEX. R. APP. 7.1(a)(1) ("If a party to a civil case dies after the trial court renders judgment but before the case has been finally disposed of on appeal, the appeal may be perfected, and the appellate court will proceed to adjudicate the appeal as if all parties were alive."); *see also Casillas v. Cano*, 79 S.W.3d 587, 591 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.) ("[A] deceased party may be represented by an executor, an administrator or an heir."). Because the judgment at issue affects rights which are not purely personal, this appeal proceeds pursuant to Rule 7.1 with the continued use of Long's name and Burch proceeding on behalf of Long as her heir. *See* TEX. R. APP 7.1 (a)(1); *Casillas*, 79 S.W.3d at 591; *see also Morales v. First Nat'l Bank*, No. 13-12-00751-CV, 2013 WL 6729888, at *1 (Tex. App.—Corpus Christi–Edinburg Dec. 19, 2013, no pet.) (mem. op.) (concluding that an appeal will be allowed to proceed after a named party passes provided that the matter on appeal does not concern personal rights).

causes of action that he allegedly could not produce evidence of; (2) with respect to Long's traditional summary judgment motion, Long's affirmative defenses of statute of frauds and statute of limitations do not apply and alternatively, an exception exists to avert their application; and (3) because of the existence of a fiduciary duty between the parties, the burden was on Long—not Abshier—to "establish the validity of any particular transaction in which she is involved."

### III.    SUMMARY JUDGMENT STANDARD OF REVIEW AND APPLICABLE LAW

Our review of a summary judgment is de novo. *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021). We take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Bush v. Lone Oak Club, LLC*, 601 S.W.3d 639, 646 (Tex. 2020). "When a party moves for both traditional and no-evidence summary judgments, we first consider the no-evidence motion." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 219 (Tex. 2017). Under Rule 166a(i), a party may move for a no-evidence motion for summary judgment "on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." TEX. R. CIV. P. 166a(i). "To defeat a no-evidence motion, the non[]movant must produce evidence raising a genuine issue of material fact as to the challenged elements." *Parker*, 514 S.W.3d at 220. "If the non[]movant fails to meet its burden under the no-evidence motion, there is no need to address the challenge to the traditional motion as it necessarily fails." *Id.* at 219.

8

To be entitled to traditional summary judgment, a movant must establish there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Painter v. Amerimex Drilling I, Ltd*., 561 S.W.3d 125, 130 (Tex. 2018). A defendant who conclusively negates a single essential element of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment on that claim. *Lujan v. Navistar, Inc*., 555 S.W.3d 79, 84 (Tex. 2018) (citing *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995)). If the movant carries this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *Id.* Evidence is conclusive only if reasonable people could not differ in their conclusions. *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 681 (Tex. 2017); *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). "[W]e must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious." *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *see Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 587 (Tex. 2015).

Here, Long included both traditional and no-evidence grounds in her motion for summary judgment, and the trial court specified it granted the motion on both grounds. Accordingly, we review the no-evidence grounds first. *See Parker*, 514 S.W.3d at 219.

## IV. LONG'S NO-EVIDENCE SUMMARY JUDGMENT MOTION

By what we interpret as his first issue on appeal, Abshier argues that Long "failed to properly and distinctly segregate the two disparate areas in her motion" and "failed to

9

specifically identify elements of each cause of action that [he] failed to meet."[10] Thus, Abshier avers "it was never [his] burden . . . to prove or refute these issues." *See* Tex. R. Civ. P. 166a(i); *Parker*, 514 S.W.3d at 220. Abshier provides no further analysis on appeal regarding any of his causes of action as they relate to Long's no-evidence summary judgment motion.

Abshier is correct that Long entwines her no-evidence arguments with traditional summary judgment arguments throughout the no-evidence section of her motion. However, "[p]arties may combine traditional and no-evidence motions in a single hybrid filing and attach evidence so long as they clearly set forth their grounds and otherwise meet the requirements for each motion." *Draughon v. Johnson*, 631 S.W.3d 81, 88 n.2 (Tex. 2021); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009) (providing that "general no-evidence challenges to an opponent's case" are impermissible). As discussed below, the no-evidence section of Long's motion appropriately sets forth the elements for each of the four claims she challenged and specifically identifies which element(s) she contended there was no evidence—which is all that is required of a movant under Rule 166a(i). *See* Tex. R. Civ. P. 166a(i); *Parker*, 514 S.W.3d at 219–20; *Davis v. Tex. Farm Bureau Ins.*, 470 S.W.3d 97, 107 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (concluding a motion which "specifically listed each challenged element" of the plaintiff's cause of action and "stated that [the nonmovant] could not establish any of these elements" met the requirements of Rule 166a(i)); *see also In re Kingman*

---

[10] Abshier's brief further acknowledges that Long "lays out the elements of the causes of action and specifically addresses them," but he maintains her motion nonetheless falls short due to "mix[ing] the concepts."

10

*Holdings, LLC*, No. 13-21-00217-CV, 2021 WL 4301810, at *4 (Tex. App.—Corpus Christi–Edinburg Sept. 22, 2021, orig. proceeding) (mem. op.) (same); *Guishard v. Money Mgmt. Int'l, Inc.*, No. 14-14-000362-CV, 2015 WL 4984853, at *2 (Tex. App.—Houston [14th Dist.] Aug. 20, 2015, no pet.) (mem. op.) (same).

## A.    The Challenged Claims

As noted *supra*, Long's no-evidence portion of her summary judgment motion is limited to a discussion of four of Abshier's claims—(1) promissory estoppel; (2) TTLA; (3) conversion; and (4) money had and received—and we address them in turn.

### 1.    Promissory Estoppel

As identified by Long in her motion, "the elements of promissory estoppel are as follows: (1) a promise; (2) foreseeability of reliance thereon by the promisor; and (3) substantial reliance by the promisee to his detriment." *Davis*, 470 S.W.3d at 107. "To support a finding of promissory estoppel, the purported promise must be sufficiently specific and definite such that it would be reasonable for the promisee to rely upon it as a commitment to future action." *Corpus Christi Day Cruise, LLC v. Christus Spohn Health Sys. Corp.*, 398 S.W.3d 303, 311 (Tex. App.—Corpus Christi–Edinburg 2012, pet. denied). Long exclusively challenged the existence of a single element: a promise.[11]

### 2.    TTLA

With respect to Abshier's TTLA cause of action, Long set forth the elements and argued Abshier provided no evidence that a theft had occurred. *See* TEX. CIV. PRAC. &

---

[11] Abshier appears to acknowledge this in a separate section of his response, stating: "The only element that [Long] challenges is whether (or not) a promise existed."

REM. CODE ANN. § 134.003(a) (providing that under the Texas Theft Liability Act, "[a] person who commits theft[, which includes the unlawful appropriation of property under section 31.03 of the penal code,] is liable for the damages resulting from the theft"); TEX. PENAL CODE ANN. § 31.03(a) (providing that "[a] person commits [theft] if he unlawfully appropriates property with intent to deprive the owner of property" and setting forth elements for unlawful appropriation). More specifically, Long stated Abshier could not show that he was the owner of the property entitling him to the proceeds he sought; that any purported appropriation by Long was without specific consent; or that Abshier had suffered damages. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 134.003(a); *see also PODS Enters., LLC v. World Trade Distrib., Inc.*, No. 14-19-00036-CV, 2021 WL 98484, at *3 (Tex. App.—Houston [14th Dist.] Jan. 12, 2021, no pet.) (mem. op.).

### 3. Conversion

Regarding Abshier's conversion cause of action, Long specified the elements and asserted that Abshier cannot show "that he owned, had legal possession of, or was entitled to possession of the [p]roperty that he has alleged was converted" by Long, that Long "unlawfully and without authorization assumed and exercised dominion and control over the [p]roperty sale proceeds to the exclusion of, or inconsistent with, [Abshier's] rights as an owner," that she was ever asked to return the property, or that Abshier suffered an injury as a result of any of Long's actions. *See Universal Plant Servs., Inc. v. Dresser-Rand Grp., Inc.*, 571 S.W.3d 346, 363 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (providing the elements of a conversion claim: "(1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and

without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property"); *see also RR Stanley v. Collins*, No. 13-18-00040-CV, 2019 WL 5800430, at *7 (Tex. App.—Corpus Christi–Edinburg Nov. 7, 2019, no pet.) (mem. op.) (providing the same).

### 4. Money Had and Received

Finally, Long's motion addressed the challenged elements of Abshier's money had and received cause of action. Long argued Abshier's claim fails because he must establish that she "holds money that, in equity and good conscience, belongs to [him]," but he is unable to "demonstrate proof of ownership to any proceeds" from the property having "voluntarily signed over the [p]roperty to [Long] in 2014." Long additionally asserts that Abshier cannot show that she was "unjustly enriched since he did not pay any money towards maintaining the [p]roperty." *See Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 302 n.4 (Tex. 2015) (explaining that a claim for "money had and received" is "an equitable doctrine applied to prevent unjust enrichment," and "[t]o prove a claim for money had and received, a plaintiff must show that a defendant holds money which in equity and good conscience belongs to him"); *Reg'l Specialty Clinic, P.A. v. S.A. Randle & Assocs., P.C.*, 625 S.W.3d 895, 903 (Tex. App.—Houston [14th Dist.] 2021, no pet.).

### 5. Summation

Long's no-evidence portion of her motion appropriately asserted there was no evidence to support at least one essential element of each claim on which Abshier would

13

have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i); *Davis*, 470 S.W.3d at 107; *cf. Vertex Servs., LLC v. Oceanwide Hous., Inc.*, 583 S.W.3d 841, 851 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (concluding that a no-evidence movant's failure to "identify which elements" of a particular claim being challenged did "not satisfy the 'specificity requirement'" under the rule; thus, the burden did not shift to the nonmovant to produce evidence). As such, the burden shifted to Abshier to provide sufficient evidence to raise a genuine issue of material fact as to each of the elements challenged by Long. *See* TEX. R. CIV. P. 166a(i).

## B.    Abshier's No-Evidence Response

Rather than produce evidence in response to Long's no-evidence summary judgment, Abshier maintained—before the trial court as he does on appeal—that he had not been required to do so as the burden never shifted. Having concluded the burden *did* shift to Abshier and because Abshier did not satisfy the minimum requirements for a response to a motion for no-evidence summary judgment,[12] we must affirm the summary

---

[12] Abshier's response to Long's no-evidence motion states in its entirety:

[Long's] motion fails to comply with the no-evidence summary judgment rule. The motion fails to state the elements of a claim or defense on which [Abshier] has the burden of proof. Moreover, the motion fails to give [Abshier] fair notice of the grounds for the motion and should be denied.

A no-evidence motion for summary judgment must state the elements as to which there is no evidence. If a no-evidence motion for summary judgment is not specific in challenging a particular element or is conclusory, the motion is legally insufficient as a matter of law. [Long] makes only [a] general and conclusory allegation that [Abshier] "cannot overcome the [s]tatute of [f]rauds and has no evidence regarding his other claims."

Contrary to [Long's] claims, there is sufficient evidence on each element of [Abshier's] claim to create "fact issues". Summary judgment is not proper[,] and the issues must be resolved by a trier of fact.

14

judgment order rendered on Abshier's promissory estoppel, TTLA, conversion, and money had and received causes of action. *See B.C. v. Steak N Shake Operations, Inc.*, 598 S.W.3d 256, 259 (Tex. 2020) (per curiam) ("If a nonmovant fails to carry this burden, then the court 'must' grant summary judgment." (quoting TEX. R. CIV. P. 166a(i))); *Nguyen v. Allstate Ins. Co.*, 404 S.W.3d 770, 776–77 (Tex. App.—Dallas 2013, pet. denied) (affirming trial court's finding that a nonmovant's summary judgment response lacked specificity when the nonmovant merely referenced groups of exhibits and did not cite, quote, or otherwise point out evidence relied upon); *see also Denson v. JPMorgan Chase Bank, N.A.*, No. 01-19-00107-CV, 2020 WL 7062452, at *3 (Tex. App.—Houston [1st Dist.] Dec. 3, 2020, no pet.) (mem. op.) (concluding a nonmovant failed to carry burden to produce evidence in a no-evidence response where the nonmovant attached exhibits to her summary judgment response but "failed to cite to or otherwise direct the trial court to specific evidence supporting the challenged elements"); *Amaya v. Bissell HomeCare, Inc.*, No. 13-18-00086-CV, 2020 WL 4382020, at *8 (Tex. App.—Corpus Christi–Edinburg July 30, 2020, no pet.) (mem. op.) ("In determining whether [the nonmovant] successfully carried his burden, neither this court nor the trial court is required to wade through a voluminous record to marshal his proof."); *Moon Sun Kang v. Derrick*, Nos. 14-13-00086-

---

The following response to Traditional Motion for Summary Judgment is hereby incorporated by reference as if fully set forth herein.

(Citations omitted). The end of Abshier's response also contains the following statement under the heading "Summary Judgment Evidence": "To support the facts in this response, [Abshier] offers the following summary judgment evidence, attached to this response, and incorporates all the evidence herein by reference." Exhibits include Long's deposition, Abshier's affidavit, the 2003 Deed, the 2010 Deed, the 2014 Deed, the 2018 Deed, the 2017 forcible detainer petition, the 2014 release of lien by FEMA, and examples of Abshier's signature.

15

CV, 14-13-00088-CV, 2014 WL 2048424, at *7–8 (Tex. App.—Houston [14th Dist.] May 15, 2014, pet. denied) (mem. op.) (same).

We overrule Abshier's first issue.

### V. LONG'S TRADITIONAL SUMMARY JUDGMENT MOTION

By what we construe as his second issue, Abshier contends that neither of Long's asserted affirmative defenses bar his claims. We only address these defenses as they relate to the remaining causes of actions: breach of contract and common law fraud. Because Long's statute of frauds affirmative defense is dispositive, we address it first. *See* TEX. R. APP. P. 47.1.

### A. Statute of Frauds

The statute of frauds is an affirmative defense that renders an agreement that falls within its purview unenforceable. *See* TEX. BUS. & COM. CODE ANN. § 26.01(a); TEX. R. CIV. P. 94. "The party pleading the statute of frauds bears the initial burden to establish its applicability." *Smith v. Smith*, 541 S.W.3d 251, 262 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also Thunder Rose Enters., Inc. v. Kirk*, No. 13-15-00431-CV, 2017 WL 2172468, at *7 (Tex. App.—Corpus Christi–Edinburg Apr. 20, 2017, pet. denied) (mem. op.). If proven, the burden then shifts to the opposing party to establish an exception. *See Smith*, 541 S.W.3d at 262.

"The purpose of the [s]tatute of [f]rauds is to remove uncertainty, prevent fraudulent claims, and reduce litigation." *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 735 (Tex. 2018) (quoting *Givens v. Dougherty*, 671 S.W.2d 877, 878 (Tex. 1984)). A contract for the sale of real estate falls within the statute of frauds and must be in writing to be

16

enforceable. TEX. BUS. & COM. CODE ANN. § 26.01(b)(4); *Wood v. Wiggins*, No. 01-18-00630-CV, __ S.W.3d __, __, 2021 WL 5312652, at *12 (Tex. App.—Houston [1st Dist.] Nov. 16, 2021, no pet.) ("[A]greements that provide for, contemplate, or require a transfer of an interest in land from one party to another are barred by the statute of frauds.").

"Whether the statute of frauds bars recovery for a [fraud] claim depends on the nature of the damages the plaintiff seeks to recover." *Hill*, 544 S.W.3d at 734. "Texas recognizes two measures of direct damages for common-law fraud: the out-of-pocket measure and the benefit-of-the bargain measure." *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015) (quoting *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 49 (Tex. 1998)). Out-of-pocket damages are those which concern the "difference between the value of that which was parted with and the value of that which was received." *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 636 (Tex. 2007) (per curiam). "Benefit-of-the-bargain damages are measured by the difference between the value as represented and the value received, allowing the injured party to recover profits that would have been made had the bargain been performed as promised." *Zorrilla*, 469 S.W.3d at 153. The statute of frauds does not bar the recovery of out-of-pocket damages for fraud. *Id.* However, if a plaintiff seeks to recover benefit-of-the-bargain damages, that is, the same damages he seeks to recover for a breach of contract, his fraud claim fails. *Sonnichsen*, 221 S.W.3d at 636 (concluding the statute of frauds barred a fraud claim for benefit-of-the-bargain damages because it arose from an unenforceable oral employment contract).

17

We review de novo whether an agreement falls within the statute of frauds. *Hill*, 544 S.W.3d at 733. Whether an exception to the statute of frauds applies is generally a question of fact. *Duradril, L.L.C. v. Dynomax Drilling Tools, Inc.*, 516 S.W.3d 147, 158 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

## B.    The Agreement

Before the trial court, the parties agreed[13] that all of Abshier's claims related to an alleged oral agreement concerning Abshier's "buying of the [p]roperty through a finance agreement with [Long]" and the resulting "undivided one-half interest in the [p]roperty . . . , which entitled him to half of the proceeds from the 2018 [s]ale." Long posits in her summary judgment motion that Abshier's claims, predicated on this alleged oral agreement, run afoul of the statute of frauds. *See* TEX. BUS. & COM. CODE ANN. § 26.01(a)(1), (2), (b)(4). In support of her affirmative defense, Long referenced and

---

[13] On appeal, Abshier argues—for the first time and contrary to his pleadings and summary judgment evidence and arguments—that the oral agreement was not for the purchase of the property and transfer of title, but rather, it was "to pay a certain sum of money out of the proceeds of a future sale of real estate in return for personal services rendered." *See Sewing v. Bowman*, 371 S.W.3d 321, 330 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd) ("[A]n agreement to share in the profits of contemplated speculative deals in real estate simply does not involve the transfer of real estate, or an interest in real estate, within the meaning of the [s]tatute of [f]rauds." (quoting *Berne v. Keith*, 361 S.W.2d 592, 597 (Tex. App.—Houston 1962, writ ref'd n.r.e.))); *Wiley v. Bertelsen*, 770 S.W.2d 878, 881 (Tex. App.—Texarkana 1989, no writ) ("The statute of frauds does not apply to an agreement to pay a certain sum of money out of the proceeds of a future sale of land.").

However, "[a]ny issue which the non[]movant claims would justify denying summary judgment must be included in the response." *Stewart v. Tex. Lottery Comm'n*, 975 S.W.2d 732, 735 (Tex. App.—Corpus Christi–Edinburg 1998, no pet.); *see Collins v. City of Corpus Christi*, 188 S.W.3d 415, 424 (Tex. App.—Corpus Christi–Edinburg 2006, no pet.). We are unable to reverse a summary judgment based on grounds not presented to the trial court. *See* TEX. R. CIV. P. 166a; *Stiles v. Resolution Tr. Corp.*, 867 S.W.2d 24, 26 (Tex. 1993) ("[W]e hold that a summary judgment cannot be affirmed on grounds not expressly set out in the motion or response."); *see also Tex. Windstorm Ins. Ass'n v. Park*, No. 13-18-00634-CV, 2019 WL 1831771, at *8 (Tex. App.—Corpus Christi–Edinburg Apr. 25, 2019, no pet.) (mem. op.) (concluding the Court was unable to affirm a judgment on a basis not first raised in the nonmovant's response to summary judgment).

attached Abshier's live petition, deposition, and response to her requests for production, the latter which Long correctly asserts "did not include any evidence of a written agreement, finance agreement[,] or bank records" affording him interest in the property or the ensuing proceeds from the sale of the property.

Long's summary judgment evidence confirms that at-issue is an oral agreement regarding a transfer of property ownership. *See* TEX. BUS. & COM. CODE ANN. § 26.01(b)(4), (6). Therefore, as a matter of law, the alleged oral agreement falls within the purview of the statute of frauds. *See Smith*, 541 S.W.3d at 262; *see also Chavez v. Bravo*, No. 13-07-00708-CV, 2010 WL 335628, at *2 (Tex. App.—Corpus Christi–Edinburg Jan. 28, 2010, no pet.) (mem. op.) (concluding that "the [oral] contract for the sale of . . . property" fell within the statute of frauds). The burden shifted to Abshier to either produce a written agreement or evidence that an exception existed. *See Smith*, 541 S.W.3d at 262.

### 2. Partial Performance Exception

In his response to Long's motion, Abshier asserted a partial performance exception, which he also raises on appeal.[14]

Under the partial performance exception to the statute of frauds,

---

[14] Additionally, for the first time on appeal, Abshier raises promissory estoppel as bar to the application of the statute of frauds. *See Sonnichsen v. Baylor Univ.*, 47 S.W.3d 122, 125 (Tex. App.—Waco 2001, no pet.) ("[P]romissory estoppel may be used to bar the application of the statute of frauds and allow enforcement of an otherwise unenforceable oral promise."); *see also Ford v. City State Bank of Palacios*, 44 S.W.3d 121, 140 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.) (observing that promissory estoppel may be raised as an independent cause of action and separately as a bar to the application of the statute of frauds). As discussed *supra*, we are unable to address or reverse a summary judgment based on exceptions not first presented to the trial court. *See Stiles*, 867 S.W.2d at 26; *Stewart*, 975 S.W.2d at 735; *see also Park*, 2019 WL 1831771, at *8.

contracts that have been partly performed, but do not meet the requirements of the statute of frauds, may be enforced in equity if denial of enforcement would amount to a virtual fraud in the sense that the party acting in reliance on the contract has suffered a substantial detriment, for which he has no adequate remedy, and the other party, if permitted to plead the statute, would reap an unearned benefit.

*Zaragoza v. Jessen*, 511 S.W.3d 816, 823 (Tex. App.—El Paso 2016, no pet.). The party relying on the partial performance exception must show that "the purpose of the alleged acts of performance must be to fulfill a specific agreement." *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 426 (Tex. 2015) (per curiam). "If the evidence establishes that the party who performed the act that is alleged to be partial performance could have done so for some reason other than to fulfill obligations under the oral contract, the exception is unavailable." *Id.* at 426–27.

Abshier argued that "[e]ven if the agreement had violated the [s]tatute of [f]rauds (it didn't), the fact that both parties performed under the agreement for years, and that the house was put on the property as a result of [Abshier's] work, takes the matter out of the [s]tatute of [f]rauds." As evidence of performance, Abshier referenced the 2010 Deed, 2014 release of lien, and Long's 117-page deposition. Abshier contended the following excerpt from Long's deposition, provided in its entirety below, is proof that "both parties had performed under the agreement":

Q.   So did [your attorney] draw [the 2010 deed] up on the—at the same day or did you have to go back?

A.   He did it the same day and explained to me on a quitclaim deed, and he wanted to do a quitclaim deed rather than a warranty deed because now he said quitclaim deeds are not really real deeds, more or less. And that at the end of the three years if [Abshier] didn't keep up with his—everything, then I could make him sign it back over to me.

20

Q. So your understanding when you draft—when this deed was signed is that it really didn't give you—didn't give [Abshier] title to the land?

A. Right.

Q. So just would look like it did, but it didn't?

A. Yeah.

Q. Okay. And what was the purpose of the deed? Why do—

A. The purpose was—

Q. —one at all?

A. The purpose was so the federal government couldn't come after me for him doing fraud.

Q. So that it would look like [Abshier] owned the land, but he wouldn't really?

A. If you notice, he only had half interest.

Q. Well, I was going to get to that.

A. Uh-huh (affirmative).

Q. But let's still talk about the quitclaim. So why—

A. To keep my ass from getting sued by FEMA.

No other evidence was cited in support of Abshier's partial performance exception in his summary judgment response.

Evidence of partial performance must show action taken to fulfill obligations under the alleged agreement. *See Westergren*, 453 S.W.3d at 426. We conclude that the 2010 Deed, 2014 release of lien, and deposition excerpt—wherein Long appears to confess that she intended the 2010 Deed as a short-term conveyance to evade legal

21

repercussions for potentially defrauding FEMA—do not constitute evidence of actions done for no other reason than to fulfill obligations under a purported long-standing oral agreement to transfer title of the property to Abshier. *Id.* at 426–27. Therefore, Abshier has not raised a fact issue as to the application of the partial performance doctrine. *See id.*; *Gutierrez v. Rios*, 621 S.W.3d 907, 916 (Tex. App.—El Paso 2021, no pet.) (concluding evidence which was "not 'unequivocally referable' to the alleged oral purchase agreement" did not "establish application of the partial performance doctrine").

Turning to the applicability of the statute of frauds and Abshier's common law fraud claim, we observe that the only evidence of damages in the record concerns what Abshier claims he is due from the 2018 sale of the property; in other words, the damages Abshier seeks under his common law fraud claim are the same as his breach of contract claim: his expected benefit under the agreement. *See Sonnichsen*, 221 S.W.3d at 636; *see also Beckham Res., Inc. v. Mantle Res., L.L.C.*, No. 13-09-00083-CV, 2010 WL 672880, at *13 (Tex. App.—Corpus Christi–Edinburg Feb. 25, 2010, pet. denied) (mem. op.) ("A party to an agreement may not frustrate the purpose of the statute and avoid its requirements by employing a fraud claim to 'essentially enforce a contract the [statute of frauds] makes unenforceable.'" (quoting *Haase v. Glazner*, 62 S.W.3d 795, 799 (Tex. 2001))). A successful "[a]pplication of the statute of frauds to a contract vitiates a fraud claim based on the same facts." *Collins v. Allied Pharmacy Mgmt., Inc.*, 871 S.W.2d 929, 936 (Tex. App.—Houston [14th Dist.] 1994, no writ).

Accordingly, we conclude that the trial court did not err in finding that Abshier's breach of contract and common law fraud claims are barred by the statute of frauds and granting Long's summary judgment on her affirmative defense.

We overrule Abshier's second issue.

## VI. FIDUCIARY DUTY

By what we construe as his third issue, Abshier appears to raise a breach of fiduciary duty cause of action, arguing: "[The] [t]rial court erred in granting [the] motion for summary judgment under the facts because the pleadings and facts alleged were such that a jury could conclude that [Long] had a 'fiduciary duty' to [Abshier] and that she—not [Abshier]—had the burden of proof." *See Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 220 (Tex. 2019) ("A fiduciary duty arises as a matter of law in certain formal relationships, including attorney-client, partnership, and trustee relationships. . . . An informal relationship giving rise to a duty may also be formed from a moral, social, domestic or purely personal relationship of trust and confidence.") (citations and quotations omitted); *see also Parker*, 514 S.W.3d at 220 (setting forth the elements of a claim for breach of fiduciary duty: "(1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages").

Citing cases which concern breach of fiduciary duty claims, Abshier argues that "[i]n a confidant/fiduciary duty case, the presumption of unfairness operates to shift both the burden of producing evidence and the burden of persuasion to the confidant/fiduciary." *See Webre v. Black*, 458 S.W.3d 113, 118 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("Texas courts have applied a presumption of unfairness to

23

transactions between a fiduciary and a party to whom he owes a duty of disclosure, thus casting upon the profiting fiduciary the burden of showing the fairness of the transactions."). Therefore, Abshier asserts, Long had the burden of proof to show: that the property "transaction was fair and equitable to" him; that Long made "reasonable use of the confidence that [Abshier] placed in her"; that Long acted with the "utmost good faith and exercise[d] the most scrupulous honesty toward [Abshier]"; that Long "place[d] the interests of [Abshier] before her own and [she did] not use the advantage of her position to gain benefit for herself at [his] expense . . ."; and that Long "fully and fairly disclose[d] all important information to [Abshier] concerning his home."

Additionally, Abshier avers that he adequately alleged facts in support of this claim in his pleadings, Long "never filed a special exception," and Abshier "provided great detail in his summary judgment affidavit that was more than sufficient to demonstrate that [Long] may have a 'fiduciary duty' to him." *See Brumley v. McDuff*, 616 S.W.3d 826, 831 (Tex. 2021) ("Special exceptions notify the parties and the court that legal or factual uncertainty exists as to the claimed cause of action or affirmative defense." (citing TEX. R. CIV. P. 91)); *see also Montelongo v. Abrea*, 622 S.W.3d 290, 301 (Tex. 2021) ("[T]o assert a cause of action, the pleading must be sufficient to enable a court to determine, with reasonable certainty, not just the facts, but 'the elements of [the] cause of action and the relief sought . . . .'" (quoting *Stoner v. Thompson*, 578 S.W.2d 679, 683 (Tex. 1979))).

Abshier's petition was never amended to allege a breach of fiduciary cause of action. The only suggestion to the existence of a fiduciary or confidential relationship between Abshier and Long in his live petition is limited to Abshier's statement that he is

24

"an incapacitated person [who] has been emotionally and financially abused by [Long] over the last several years." *See Stoner*, 578 S.W.2d at 683 ("In determining whether a cause of action was pled, plaintiff's pleadings must be adequate for the court to be able, from an examination of the plaintiff's pleadings alone, to ascertain with reasonable certainty and without resorting to information aliunde the elements of plaintiff's cause of action and the relief sought with sufficient information upon which to base a judgment."). Moreover, nothing in the record indicates that Long understood a claim for breach of fiduciary duty was alleged by Abshier; in other words, there was no evidence of a trial by express or implied consent. *See Cunningham v. Waymire*, 612 S.W.3d 47, 63 (Tex. App.—Houston [14th Dist.] 2019, no pet.) ("Unpleaded claims or defenses that are tried by express or implied consent of the parties are treated as if they had been raised by the pleadings.").

Long was not required to prove that Abshier could not succeed on any conceivable claim in order to obtain summary judgment. *See Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006) (per curiam) ("Defendants are not required to guess what unpleaded claims might apply and negate them."). Thus, any issue on appeal concerning an unpleaded breach of fiduciary cause of action is overruled.[15] *See Jones v. Wal-Mart*

---

[15] Abshier cites to *Garcia v. Fabela*, 673 S.W.2d 933, 935 (Tex. App.—San Antonio 1984, no writ) in this portion of his brief in furtherance of the following proposition: "A constructive trust may be imposed on property that was conveyed to a confidant of the grantor *in justifiable reliance on the confidant's oral promise to hold the property in trust for a purpose such as later reconveyance back to the grantor*." *Garcia* concerns an appellant's use of a confidential, fiduciary relationship as a bar to a statute of frauds affirmative defense. *Garcia*, 673 S.W.2d at 935 ("Basically, appellants contend that the statute of frauds does not defeat their equitable action for breach of an oral contract to reconvey title because a confidential relationship existed between the parties. We agree."); *see also In re Hashimi*, No. 14-17-00488-CV, 2018 WL 4136903, at *4 (Tex. App.—Houston [14th Dist.] Aug. 30, 2018, no pet.) (mem. op.) ("An exception to the statute of frauds exists when there has been a breach of a fiduciary, or confidential, relationship that

*Stores, Inc.*, 893 S.W.2d 144, 148 (Tex. App.—Houston [1st Dist.] 1995, no writ) (concluding evidence of an unpleaded cause of action did not defeat summary judgment on appeal where no summary judgment was brought on the unpleaded claim); *see also Bliss v. Bank of Am. N.A.*, No. 05-18-00476-CV, 2019 WL 2353445, at *5 (Tex. App.—Dallas June 4, 2019, pet. denied) (mem. op.) ("Although the [movants] bore the burden to prove their right to judgment as a matter of law, they were not required to disprove theories that [the nonmovant] did not raise in her pleadings or in her summary judgment response.").

## VII.   CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Delivered and filed on the
17th day of February, 2022.

---

requires the imposition of a constructive trust."). As discussed *supra*, even should we interpret Abshier's issue, subtitled "Breach of Fiduciary Duty/Confidential Relationship," as an exception to Long's statute of frauds affirmative defense, we cannot entertain an exception not initially expressly set out in Abshier's live pleading or response. *See Stiles*, 867 S.W.2d at 26; *Stewart*, 975 S.W.2d at 735. Though Abshier categorizes Long as a "trustee" in the "Facts" portion of his response, he does not assert that her status as a trustee acts as a bar to Long's statute of frauds affirmative defense.

To the extent that Abshier attempts to argue a stand-alone constructive trust argument on appeal, it is likewise overruled. As noted *supra*, the imposition of a constructive trust is an equitable remedy—not an independent cause of action, and we have already concluded the trial court properly granted summary judgment on all existing causes of action. *See Bradshaw*, 457 S.W.3d at 87; *Sherer*, 393 S.W.3d at 491; *see also Mauriceville Nat. Bank v. Zernial*, 892 S.W.2d 858, 860 (Tex. 1995) ("[S]ince the imposition of a constructive trust and the award of punitive damages were contingent upon a finding of conversion, those awards must also fall.").

26